William **LETELLIER** et al., **Plaintiffs,**

v.

Max **CLELAND** et al., **Defendants.**

**Civ. No. 77–39–D.**

United States District Court,
S. D. Iowa,
Davenport Division.

Sept. 12, 1977.

R. Richard Bittner, Larry L. Shepler, and Robert D. Lambert of Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, Iowa, for plaintiffs.

James R. Rosenbaum, U. S. Atty., So. Dist. of Iowa, Des Moines, Iowa, Larry Moore and Martin Gussow, Dept. of Justice, Washington, D. C., for defendants.

## ORDER

STUART, Chief Judge.

On June 6, 1977 a complaint was filed with this Court seeking declaratory and injunctive relief concerning enforcement of certain provisions of Public Law 94–502 amending the Veteran's Education and Employment Act, 38 U.S.C. §§ 1501 et seq. Plaintiffs, in addition to requesting a temporary restraining order, also sought a declaration that the American Institute of

Commerce (hereinafter AIC) is an "institution of higher learning" within the meaning of Title 38, U.S.C. § 1652, and that such institution has the authority to grant a "standard college degree" pursuant to § 1652. Plaintiffs also seek a declaration that the Clinton campus of AIC constitutes a facility within normal commuting distance from the AIC main campus.

On June 9, 1977 plaintiff's application for a temporary restraining order came on for hearing and on June 15, 1977 this Court denied the request stating that "while substantial injury has been shown, likelihood of success on the merits has not been demonstrated and the application must be denied". Currently pending before the Court is defendants' resisted motion to dismiss or in the alternative for summary judgment. As the court will consider the record made at the hearing on the application for a temporary restraining order, the Court will rule on the alternative motion for summary judgment.

Plaintiffs are five service veterans attending AIC and the school itself. Plaintiffs challenge the VA's announced intention to effectively reduce the educational benefits of the individual plaintiffs attending AIC. By letter dated October 27, 1976 the VA informed AIC that an error had been made in accepting approval of its degree program, and that such approval would be rescinded effective March 24, 1977. This action was concurred in by the VA's state approving agency, the Iowa Department of Public Instruction. The effective date of the recision was later extended to June 16, 1977.

The VA's action was prompted by amendments to Title 38 U.S.C. enacted on October 15, 1976 by Public Law 94-502 which defined the terms "institution of higher learning" and "standard college degree" for purposes of administering the veteran's benefit programs. Title 38 U.S.C. § 1652 provides:

(f) [T]he term 'institution of higher learning' means a . . . business school offering post secondary level academic instruction that leads to an associate or higher degree if the school is empowered by the appropriate State education authority under State law to grant an associate or higher degree. When there is no state law to authorize the granting of a degree, the school may be recognized as an institution of higher learning if it is accredited for degree programs by a recognized accrediting agency.

(g) [T]he term 'standard college degree' means an associate or higher degree awarded by (1) an institution of higher learning that is accredited as a collegiate institution by a recognized regional or national accrediting agency; or (2) an institution of higher learning that is a 'candidate' for accreditation as that term is used by the regional or national accrediting agencies; or (3) an institution of higher learning upon completion of a course which is accredited by an agency recognized to accredit specialized degree level programs.

According to the legislative history of Public Law 94-502, these statutory definitions merely codified longstanding practices and pre-existing regulations of the Veteran's Administration. See 5 U.S.Code Cong. & Admin.News, pp. 5302 and 5321 (1976).

The VA and its state approving agency take the position that no law exists in Iowa allowing the granting of degrees by a state education authority. AIC is approved by the Association of Independent Colleges and Schools (AICS) as a "business school" with diploma granting authority. It is not approved as a "junior college of business" with authority to grant a standard college degree, although it is currently seeking such approval. It must add twenty hours of liberal arts courses to its curriculum.

The importance of the foregoing definitions and distinctions to the plaintiffs herein lies in the course measuring criteria for purposes of administering veteran's educational benefits. Courses offered by validly accredited institutions of higher learning are measured on a credit hour basis. Courses leading to a standard college degree automatically qualify for credit hour measurement. In such situations, veterans

taking 12 credit hours per quarter or semester can qualify for full time student benefits. See 38 U.S.C. § 1788(a)(4). On the other hand, course programs for veterans attending schools not qualified or accredited as an institution of higher learning, which award diplomas rather than a standard college degree, are measured on a clock basis. In order to receive full time student benefits twenty-two clock hours of classroom work per week are required. See 38 U.S.C. § 1788(a)(2). Part time benefits are adjusted downward from 12 semester hours or twenty-two clock hours respectively.

Prior to October 26, 1976, the degree programs at AIC were approved for credit hour measurement. However, in view of the definitions codified in Public Law 94–502, 38 U.S.C. §§ 1652(f) and (g) the VA and the Iowa Department of Public Instruction determined that this status approval was erroneous. AIC was notified that their programs would, after June 16, 1977, be measured on a clock hour basis in determining attending veterans benefits. AIC has not been so accredited although some time had been allowed for the school to attempt to do so. Since many veterans attend AIC at night, it is difficult, if not impossible for them to work full time during the day to support their families and attend twenty-two clock hours in class at night.

In its ruling on plaintiffs' application for a temporary restraining order the Court stated: "The issue of the Iowa Department of Public Instruction's authority to empower institutions to grant degrees should be determined in the state courts." This is an unsettled and even unexplored area of the law. This court should resist the opportunity to make new law for Iowa. This Court therefore will not consider or decide that issue. The Court might note that this proposition was not strongly urged, although it was not abandoned.

Plaintiffs claim that the reduction in their benefits resulting from the recission of AIC's approval as an "institution of higher learning" offering a "standard college degree" has deprived them of a vested property right in a manner contrary to substantive and procedural due process guaranteed by the Fifth Amendment to the United States Constitution.

In their due process argument plaintiffs claim that they have a vested property right to veterans educational benefits stating:

> The specific property rights which are involved here are the right of an institution to remain approved for veterans benefits, and the right of the individual plaintiffs to receive the veteran benefits to which they are entitled as a result of their military service.

■ The Court has no trouble accepting the plaintiffs contention that the veterans themselves have a legitimate property interest in continued receipt of veterans benefits. The Supreme Court has consistently held that governmental payments and benefits constitute property in the hands of legitimate recipients. See *Goldberg v. Kelley*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (welfare payments); *Wheeler v. Montgomery*, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970) (old age assistance benefits). See also *Ryan v. Shea*, 525 F.2d 268 (10th Cir. 1975) (veteran's widow benefits); *Brown v. Weinberger*, 382 F.Supp. 1092 (D.Md.1974) (supplemental security income benefits), aff'd 529 F.2d 514 (4th Cir. 1975). That this is so turns upon the Supreme Court's determination that existence of a property interest does not depend upon whether payments are properly characterized as a right or a privilege. See *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).

### I. AIC and the individual plaintiffs.

■ The Court has difficulty identifying a constitutionally protected interest which would entitle AIC or the individual plaintiffs to the protection of the due process clause under these facts. An administrative agency has the right to change a prior interpretation of a regulation or correct an erroneous classification based on error, *Automobile Club v. Commissioner of Inter-*

**940**

*nal Revenue,* 353 U.S. 180, 184, 77 S.Ct. 707, 1 L.Ed.2d 746 (1956); *Chisholm v. Federal Communications Commission,* 538 F.2d 349, 364 (D.C.Cir.1976), and make the change retroactive. *Automobile Club v. Commissioner of Internal Revenue,* supra.

In addition, the Supreme Court has stated:

In our last consideration of a challenge to the constitutionality of a classification created under the Social Security Act, we held that 'a person covered by the Act has not such a right in benefit payments as would make every defeasance of "accrued" interests violative of the Due Process Clause of the Fifth Amendment'. *Flemming v. Nestor,* 363 U.S. 603, 611, [80 S.Ct. 1367, 4 L.Ed.2d 1435.] . . . Nor does an expectation of public benefits confer a contractual right to receive the expected amount. Our decision in *Goldberg v. Kelley,* 397 U.S. 254, [90 S.Ct. 1011, 25 L.Ed.2d 287] upon which the District Court relied, held that as a matter of procedural due process the interest of a welfare recipient in the continued payment of benefits is sufficiently fundamental to prohibit the termination of those benefits without a prior evidentiary hearing. But there is no controversy over procedure in the present case, and the analogy drawn in *Goldberg* between social welfare and 'property', 397 U.S. at 262 n. 8, [90 S.Ct. 1011,] cannot be stretched to impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits.

*Richardson v. Belcher,* 404 U.S. 78, 80–81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971).

■ If the reference to due process is directed at passage of the legislation, assuming it is required, both procedural and substantive due process were satisfied in this case. As was noted in *Fielder v. Cleland,* 433 F.Supp. 115 (E.D.Mich. filed May 23, 1977):

Extensive public hearings were held prior to enactment of the 1976 Act. The Senate Report, supra, reflects the presence at those hearings of many opponents of the bill as well as proponents. Among the former group were several educational associations and veteran's groups which opposed this provision of the legislation for much the same reasons as given here by these plaintiffs. . . .

*Fielder v. Cleland,* supra at 121. The Court is fully convinced that adequate procedural safeguards were followed in adoption of the legislation in question. Such clarifying definitions were adopted after extensive Congressional consideration primarily for the benefit and protection of the veterans.

## II. AIC.

■ Assuming for the purposes of argument that AIC was entitled to basic due process, the record shows it received due process here. The VA notified it by letter dated October 27, 1976 that an error had been made in accepting its degree program and that the approval would be rescinded effective March 27, 1977. A similar letter was received from the VA's state approving agency November 3, 1976. Various meetings and conferences were held. The cut off date was later extended to June 16, 1977. On that date AIC had not yet been approved as a degree granting institution, although other similarly situated institutions had been accredited by a recognized accrediting agency. Such procedures fully satisfy due process notice and hearing requirements.

■ It also is clear from the legislative history of the Act that the definitions of "institute of higher learning" and "standard college degree" were merely codifications of long standing practices of the VA and of pre-existing regulations. See 5 U.S. Code Cong. & Admin.News, p. 5302 (1976). Accordingly accreditation of AIC was erroneous even before implementation of Public Law 94–502. Subsequent revocation, even if it had been retroactive would have denied no substantive nor procedural due process to plaintiffs under the facts of this case.

## III. The individual plaintiffs.

■ Finally the Court notes that the legislation deprives no veteran nor plaintiff in

this case of the opportunity to obtain veteran's educational benefits. The clarifying amendments in question here simply restrict the number or type of educational institutions where such benefits may be utilized and require the veteran to attend more hours of class for full benefits. However, no other restrictions have been placed upon the qualification for, nor the amount of, payments available to the plaintiffs in this case. See *Fielder v. Cleland, supra.* Were plaintiffs benefits being terminated on the ground that they were not individually qualified to receive veteran's benefits, they would be entitled to procedural due process. However, the Court does not believe that veterans have a constitutionally protected property or liberty interest in attending a particular institution that fails to meet the Veterans Administration requirements for a particular accreditation.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment shall be, and the same is hereby granted. The Clerk of the Court is authorized and directed to enter judgment against the plaintiffs and in favor of the defendants in accordance herewith, together with the costs of this case.